# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | |
|---|---|
| BARRY J. NACE, ESQ.<br>1615 New Hampshire Ave., NW<br>Washington, DC 20009<br><br>            Petitioner,<br><br>   v.<br><br>DISTRICT OF COLUMBIA COURT OF<br>APPEALS<br>Historic Courthouse<br>430 E Street, NW<br>Washington, DC 20001<br><br>Serve:<br>Clerk of the Court<br>Historic Courthouse<br>430 E Street, NW<br>Washington, DC 20001<br><br>            Respondent. | Case No.: |

## PETITION FOR INJUNCTIVE RELIEF PURSUANT TO RULE 65
## OF THE FEDERAL RULES OF CIVIL PROCEDURE

*COMES NOW* Petitioner, Barry J. Nace, Esq., by and through undersigned counsel, and asks this Court for immediate injunctive relief for the reasons stated below.

   1. A license to practice law is a valuable right, such that its withdrawal must be accompanied by appropriate due process procedures. (*Comm. On Legal Ethics of the West Virginia State Bar v. Boettner*, 183 W.Va. 136 (1990)).

   2. Clients are not merchandise and lawyers are not tradesman. Lawyers have nothing to sell but personal service. (*ABA Comm. On Professional Ethics and Grievance*, Formal Op. 300 (1961)).

3. Petitioner — in what remains a hotly litigated matter — was suspended from the practice of law by the West Virginia Supreme Court of Appeals for a period of 120 days.

4. Reciprocal discipline proceedings were initiated by the District of Columbia Office of Bar Counsel on December 17, 2013.

5. Petitioner brings this action because he has been suspended from the practice of law in the District of Columbia for more than a hundred days beyond the 120 day suspension issued by the West Virginia Supreme Court of Appeals because, at the worst, he was four days late in filing his D.C. Bar Rule XI, Section 14 Affidavit.

6. Petitioner maintains that the computation of time was incorrectly performed by Bar Counsel and the Court of Appeals for the District of Columbia.

7. The District of Columbia Court of Appeals, in response to Petitioner's Response to a Show Cause Order, issued a ruling which states: "Further ordered that respondent's attention is drawn to the requirement of Rule XI. § 14 relating to suspended attorneys and to the provisions of Rule XI. § 16 (c) dealing with the timing of eligibility for reinstatement as related to compliance with Rule XI, § 14, including the filing of the required affidavit. *See* Exhibit 1.

8. The District of Columbia Court of Appeals, as can be seen by the Order, never stated in its Order when an affidavit was due. It did not state by what date, when, or in how many days said affidavit had to be filed. It simply referred Petitioner to the Rules. Petitioner should have been permitted to rely on those Rules.

9. In the "Show Cause Order" based upon reciprocity, the Court immediately suspended Petitioner.

10. On March 28, 2014, in response to Petitioner's Response, the Court did as requested by Petitioner and sent the case to the "merits division," which still has not ruled on the matter. A hearing is set for June 3, 2014.

11. The result was to leave the suspension in place until 120 days after Petitioner filed his appropriate Affidavit on February 6, 2014, or until June 6, 2014, a total of 218 days, nearly 100 days more than originally suspension imposed by the State of West Virginia.

12. Petitioner asks this Court to issue a temporary restraining order preventing anyone or anybody from preventing Mr. Nace from practicing law in the District of Columbia until the "Merits Division" has made its decision.

13. Otherwise, your Petitioner is being punished without due process and without any rational basis for a continuing suspension.

14. In fact, at this time, Mr. Nace is in good standing in every jurisdiction and every Federal Court in which he is actually licensed and permitted to practice law, except the District of Columbia.

15. Moreover, the District of Columbia Court of Appeals has failed to follow its very own Rules on how "time" is to be calculated, the effect of which is to financially harm Petitioner.

16. On March 28, 2013, the Supreme Court of Appeals of West Virginia issued an Opinion, No. 11-0812, Lawyer Disciplinary Board v. Barry J. Nace, Esq., in which Mr. Nace was suspended from the practice of law for a period of 120 days, without any requirement for reinstatement.

17. The Mandate issued on October 25, 2013.

18. Mr. Nace immediately stopped practicing in all jurisdictions and courts in which he was licensed, including in this Court, other Federal Courts, as well as the courts of the District of Columbia, Maryland, and Pennsylvania.

19. Mr. Nace was permitted to resume practicing in West Virginia on February 23, 2014 and he began doing so shortly thereafter.

20. Mr. Nace kept the Bar Counsel of each jurisdiction, specifically the District of Columbia, informed as to the proceeding in West Virginia by letter on August 14, 2013, September 20, 2013, and November 15, 2013. Mr. Nace's counsel also spoke on the telephone with Assistant Bar Counsel and met with said counsel concerning required action by the District of Columbia Bar.

21. Through no fault of Petitioner, not until December 17, 2013, did Bar Counsel provide the District of Columbia Court of Appeals with the necessary information required of D.C. Bar Rule XI, Section 11(b).

22. One month later, on January 17, 2014, the Court of Appeals initiated the required action by issuing its "Show Cause" Order which included an immediate suspension and requiring a response to its show cause order in thirty days.

23. On February 6, 2014, through counsel, Mr. Nace timely filed a Response to the Show Cause Order.

24. Also, on February 6, Mr. Nace, through counsel, filed an Affidavit (Exhibit 2) stating that he had complied with D.C. Bar Rule XI, Section 14.

25. The last paragraph of the Affidavit *as proposed by Bar Counsel* states that "I understand that if this affidavit is rejected by Bar Counsel in a Notice of Non-Compliance as provided in Board Rule 9.9(b), the period of suspension may be extended by the Court."

26. At no time has Bar Counsel provided a "notice of non-compliance" which would allow the suspension to be extended by the Court.

27. In fact, Bar Counsel stated in its Response to the Show Cause Order that "…the Affidavit otherwise complies with Respondent's obligations under D.C. Bar Rule XI, Section 14(g)."

28. However, Bar Counsel stated that the Affidavit was "untimely" and rather than running consistent with the West Virginia suspension, requested the Court to commence the discipline from February 6, 2014, the date the Affidavit was filed.

29. No reason exists why the suspension should start at that time. There is no common sense reason given. Such conduct is simply arbitrary and in this case a result of a Bar Counsel who believes he can be arbitrary and capricious because he is Bar Counsel.

30. Such action would result in a suspension approximately 100 days longer than the West Virginia suspension.

31. Bar Counsel failed to consult the Rules of the District of Columbia Court of Appeals and, thus, incorrectly computed the time by which Mr. Nace's Affidavit was due.

32. While Mr. Nace's duty to file his Rule XI, Section 14 Affidavit was triggered by the Court's January 17 Order entering the interim suspension, the time frame by which such affidavit was due is detailed by Rule, not the Court's order.

33. In other words, the Court ***did not*** set a date by which Mr. Nace's Affidavit was due, but instead referred to the governing Rule.

34. Relying on the District of Columbia Court of Appeals Rules for computation of time, Mr. Nace's Affidavit was due no later than February 9, 2014. Court of Appeals Rule 26 is entitled "Computation of Time." Section A of that Rule states the following:

> **(a) Computing Time.** The following rules apply in computing any period of time specified in these rules or in any order of this court or applicable statute:

5

(1) Exclude the day of the act, event, or default that begins the period.

(2) Exclude intermediate Saturdays, Sundays, and legal holidays when the period is less than 11 days, unless an applicable statute or order of this court expressly provides otherwise, or unless the period is stated in calendar days.

(3) Include the last day of the period unless it is a Saturday, Sunday, legal holiday, or--if the act to be done is the filing of a paper in court--a day on which the weather or other conditions cause the Clerk's office to be closed.

(4) As used in this rule, "legal holiday" includes New Year's Day, Martin Luther King, Jr.'s Birthday, Presidents' Day, Memorial Day, Independence Day, Labor Day, Columbus Day, Veterans' Day, Thanksgiving Day, Christmas Day, and any other day appointed as a holiday by the President or the Congress of the United States, or by the District of Columbia.

D.C. Ct. App. R. 26(a). Section C goes on to direct that

**(c) Additional Time After Service.** When a party is required or permitted to act within a prescribed period after a paper is served on that party, 5 calendar days are added to the prescribed period unless the paper is delivered on the date of service stated in the proof of service. For purposes of this Rule 26(c), a paper that is served electronically is not treated as delivered on the date of service stated in the proof of service. Rule 26(c) does not apply when an order of this court prescribes the time in which a party is required or permitted to act.

D.C. Ct. App. R. 26(c).

35. The following chart applies these Rules to the instant facts:

| January 17, 2014 | Date Order Issued | |
| --- | --- | --- |
| January 18, 2014 | Saturday | Does not count |
| January 19, 2014 | Sunday | Does not count |
| January 20, 2014 | Monday—MLK Day | Does not count |
| January 20, 2014 | Tuesday | Day 1 |
| January 21, 2014 | Wednesday | Day 2 |
| January 22, 2014 | Thursday | Day 3 |
| January 23, 2014 | Friday | Day 4 |

6

| January 24, 2014 | Saturday  | Does not count       |
| ---------------- | --------- | -------------------- |
| January 25, 2014 | Sunday    | Does not count       |
| January 26, 2014 | Monday    | Day 5                |
| January 27, 2014 | Tuesday   | Day 6                |
| January 28, 2014 | Wednesday | Day 7                |
| January 29, 2014 | Thursday  | Day 8                |
| January 30, 2014 | Friday    | Day 9                |
| January 31, 2014 | Saturday  | Does not count       |
| February 1, 2014 | Sunday    | Does not count       |
| February 2, 2014 | Monday    | Day 10               |
| February 3, 2014 | Tuesday   | Day 1 of extra 5 days |
| February 4, 2014 | Wednesday | Day 2 of extra 5 days |
| February 5, 2014 | Thursday  | Day 3 of extra 5 days |
| February 6, 2014 | Friday    | Day 4 of extra 5 days |
| February 7, 2014 | Saturday  | Day 5 of extra 5 days |

36. Under the Rules, Mr. Nace's filing deadline would have been on Saturday, February 7. Pursuant to D.C. Ct. App. R. 26(c), Mr. Nace's petition would have thus been due no later than Monday, February 9, 2014. It is not disputed that Mr. Nace's Section 14 Affidavit was filed February 6, 2014— or *three days early*.

37. On February 6, 2014, the Affidavit was filed and included in the transmittal letter to Bar Counsel was this statement: "should you find any deficiency in the Affidavit, please do not hesitate to contact me so that we can correct it." Nothing was heard from the Office of Bar Counsel until its Opposition was filed.

7

38. Bar Counsel, however, has argued that the Board of Professional Responsibility Rules required the affidavit to be filed in ten days, counting holidays and weekends, and thus the Affidavit was four days late and Mr. Nace, your Petitioner, should be punished another 100 days.

39. Mr. Nace continues, therefore, to not practice law in the District of Columbia.

40. Despite having done everything required of him, Mr. Nace is being harmed every day as he cannot meet with potential new clients, take depositions, file pleadings, or any of the other necessities of maintaining his livelihood.

41. Bar Counsel's mistakes and the Court's action of leaving the Suspension in place even though the issue of reciprocity is to be determined by the "merits division" means that your Petitioner cannot practice law even though no decision has been by the Merits Division or anyone else, for that matter.

42. Mr. Nace's property and right to utilize his license has been taken away without due process, arbitrarily and without cause and he is being punished before any finding has been made.

43. For over 40 years, Mr. Nace has had an unblemished record and tried over 100 malpractice cases and product liability cases. He has served the Bar in innumerable ways – the involuntary and voluntary Bars. He particularly served the Bar in that he served as President of the American Association of Justice (and vice-president, president-elect, and two years as Treasurer) and served two years as President of the National Board of Legal Specialty Certification. He has voluntarily taught and lectured to lawyers and also to judges. He even took the time to coach baseball for fifteen years. He has been a good citizen and an honorable attorney.

44. The attached character letters, Mr. Nace's curriculum vitae (Exhibit 3 & 4), and co-counsel's comment in the underlying case: "He is as honest and an ethical human being as I know," adequately describe Mr. Nace.

45. In over 40 years as a lawyer, Mr. Nace had an unblemished record and had an excellent reputation as a malpractice lawyer.

46. During those over 40 years Mr. Nace had served the District of Columbia Bar in several capacities; served as President of Bar Associations; never had a Grievance filed against him; received numerous recognitions and awards and served his clients well. He is Board Certified by both the National Board of Legal Specialty Certification (Civil Practice) and the American Board of Professional Liability Attorneys (medical malpractice). He recently received the "Champion of Justice Award" from the Metropolitan District of Columbia Trial Lawyers Association.

47. All of the work he has done for various Bars, all of the work he has done in the field of Board Certification, all of the work he has done for the Courts when requested, all of the lectures he has given in law schools, and various Bar and outside groups, as well as his service to the Bar and voluntary Bars amount to years of free, voluntary work, more than the Panel and Office of Disciplinary Counsel in West Virginia combined. Even the Panel stated he has an "excellent" reputation and the West Virginia Supreme Court said he is "esteemed among his peers." And yet he cannot even get a Court to consider his plight.

48. But, to make this matter worse here in the District of Columbia, the Bar Counsel cited two cases that do not state what Bar Counsel says that they do. To the contrary, the cases support Mr. Nace's position that the interim suspension immediately be lifted. The first case cited by Bar Counsel is *In re Mulkeen*, 606 A2d.136 (1992). This case involved an individual who was suspended for one year by the State of New Jersey for mishandling funds and is not at all like the

case *sub judice*. (Numerous other requirements were placed upon Mr. Mulkeen, whereas no other requirements were placed upon Mr. Nace). Bar Counsel stated that this case holds that "*nunc pro tunc* treatment is unavailable when attorney fails to file Section 14 Affidavit within 10 days of effective date of suspension." Bar Counsel's Response at 2 - 3. *Mulkeen* says nothing of the sort. On the contrary, in that case the respondent had *not filed* his Section 14 Affidavit at the time that the Court of Appeals ruled.[1] At the time of the Court's ruling, the respondent still had not filed his Section 14 Affidavit: Here Respondent did file his Affidavit and Bar Counsel acknowledges that it complies with the Rule. The *Mulkeen* opinion thus stands for the fact that an interim suspension will not be lifted at least until there has been compliance with Section 14. It does not hold that failure to file within ten days prohibits *nunc pro tunc* treatment.

49. Even if the Court of Appeals determined that Mr. Nace's Affidavit was not timely, would any reasonable person somehow suggest that even a delay of at most four days require an effective sanction of an *additional* three months, thus bringing Mr. Nace's time away from his D.C. practice to *seven months*? Contrary to Bar Counsel's assertions, the case does not stand for the proposition that failure to file within ten days mandates that a respondent not be provided *nunc pro tunc* protection.

50. The second case cited is *In re Weekes*, 990 A.2d 470 (2010). This was a case where an attorney had been suspended indefinitely in Massachusetts beginning in June, 2007. The District of Columbia Board of Professional Responsibility recommended reciprocal discipline consisting of a five year suspension with a requirement that respondent show fitness to resume the practice.

---

[1] The Court of Appeals initially reinstated the respondent because it was under the incorrect assumption that the respondent had filed his Section 14 Affidavit. Upon learning that the Affidavit had not been filed, the Court reinstated the suspension.

*Id.* The respondent in that case had been notified on June 20, 2006, that the affidavit he had submitted was not sufficient. *Id.* "More than two years after the Board's 2006 Report, and following other communications advising Mr. Weekes that he had not submitted an acceptable affidavit, he filed an affidavit complying with Rule XI, § 14(g). *Id.* at 471.

51. The Court looked to *In re Sussman*, 876 A.2d 637 (D.C. 2005), "where the disciplined attorney received *nunc pro tunc* treatment after being given an opportunity to file an affidavit that complied with § 14." *Id.* at 473-74. In applying the *Sussman* factors, the Court in *Weekes* wrote that "Despite all of the opportunities in 2005, 2006, 2007, and early 2008 to file a proper sec. 14(g) affidavit, not until June 24, 2008 did Mr. Weekes file an affidavit." The Court concluded "that the principle of 'full, though technically imperfect compliance,' *Schlosberg,* 650 A.2d at 1333 (citing Gardner, 650 A.2d at 693), is not applicable . . . ." *Weekes*, 990 A.2d at 475.

52. Curiously, Bar Counsel elected not to cite the *Sussman* opinion in its Response nor even consider the "principle of 'full, though technically imperfect compliance." First, the *Sussman* factors discussed in *Weekes* were explained:

> The Board articulated the following factors as a guide for determining whether to recommend *nunc pro tunc* treatment:
>
> 1. Did the omission or defect go to one of the core requirements listed in D.C. Bar R. XI, § 14(a) through (d)? If so, was there actual compliance with these requirements which was simply not adequately reported in the affidavit?
>
> 2. Does respondent's conduct, both in the underlying violation and in the disciplinary proceeding suggest that an opportunity to correct is in order?
>
> 3. Does fairness to the respondent suggest that an opportunity to correct is in order? If so, would *nunc pro tunc* treatment adequately protect the public interest?

*In re Weekes*, 990 A.2d 470, 474 (D.C. 2010).

53. Bar Counsel likely did not raise these factors because each of them would fall in favor of granting Mr. Nace *nunc pro tunc* treatment:

11

  a. The "omission" – at worst four days late filing his Section 14 Affidavit – does not go to a "core requirement";

  b. There is nothing but evidence in this case to suggest that at every step during this process in West Virginia and the District of Columbia that Mr. Nace has fully complied with the requirements of the respective bars and courts. Moreover, at worst, Mr. Nace has only been accused of a mistake or negligence[2]—nothing intentional; and,

  c. Fairness certainly falls on the side of permitting Mr. Nace's alleged late-filed affidavit to be considered timely.

54. Additionally, the *Weekes* Court cited *In re Schlosberg*. In that case, the Court stated the following:

> We are aware that recently we have held that compliance with the requirements of § 14(f) that is less than technically perfect can suffice to start the running of a retroactive period of probation. *In re William E. Gardner,* 650 A.2d 693 (D.C.1994) (section 14(f) substantially complied with where upon suspension in D.C., respondent "promptly provided the Board with written notice which the Board concluded informed it that respondent had no clients, adverse parties, or tribunals within the District to inform of his suspension," although notification not in affidavit form and lacked information about other jurisdictions in which respondent admitted).

*In re Schlosberg*, 650 A.2d 1329, 1333 (D.C. 1994).

55. It is, again, curious, that Bar Counsel would elect not to cite this case. Bar Counsel's sole opposition to Mr. Nace's Petition to return to the practice after voluntarily not practicing in the District for over 120 days now is that his Affidavit was not timely filed. As noted above, Bar Counsel is absolutely wrong under the rules in asserting that Mr. Nace's deadline to file was January 27, 2014. But additionally Mr. Nace took the following action:

  a) Sent a letter on August 14, 2013 which included many documents concerning the matter in West Virginia;

  b) Sent a letter to Bar Counsel on September 25, 2013 with updated information;

---

[2] Given the West Virginia court's holding that negligence amounts to an ethical violation, perhaps the Office of Bar Counsel should be investigated for failing to apply App. Ct. R. 26 in counting the days in which Mr. Nace had to respond. Surely that was a mistake; in West Virginia it might have amounted to a four month suspension.

12

  c) Sent another letter on November 15, 2013, updating Bar Counsel on the West Virginia matter;

  d) Respondent's counsel spoke on the telephone on several occasions with Bar Counsel; and,

  e) Counsel for Mr. Nace requested an appointment with Mr. Shipp, but Mr. Shipp did not appear at the meeting. During the meeting with other members of the Office of Bar Counsel, Respondent's counsel tried to explain as best he could the situation in West Virginia, one which Respondent maintains has resulted in a grossly unfair result.

56. Bar Counsel did not cite *Schlosberg* because it knows that, at the absolute worst, Mr. Nace was four days late filing his Section 14 Affidavit and otherwise has gone above and beyond in his requirements of being upfront, candid and cooperative with the Bar. Simply put, Mr. Nace's handling of this matter has been exemplary, all while maintaining complete innocence of any ethical violation and continuing to litigate the matter in West Virginia.

57. Additionally, Bar Counsel failed to even give Mr. Nace the proper investigation, instead simply regurgitating all of the comments from the West Virginia Bar which Mr. Nace claims are incorrect and misstated.

58. Even another court, the United States District Court for the District of Maryland, in commenting on the 120 day suspension stated that "…the fact that the suspension, while perhaps somewhat longer than necessary, has already expired by its terms,…"

59. Petitioner's suspension in the District of Columbia has now reached 199 days.

60. Accordingly, at this time your Petitioner has had his license to practice arbitrarily withheld before a decision that such is even appropriate, clearly a trampling of his due process rights.

61. Petitioner attaches hereto as Exhibit 5, a background on how this situation has even occurred.

62. The entire issue of the original suspension arises from whether Mr. Nace even made a mistake when he didn't provide a bankruptcy trustee with funds from a successful medical malpractice case. That issue has not yet been decided by the proper court, i.e. the Bankruptcy Court. That did not stop the West Virginia Supreme Court of Appeals from taking hasty action for reasons having nothing to do with the issue. Indeed, the Trustee's law partner was the chair of the Bar Investigative Committee. Thus any culpability has not yet been resolved and Petitioner vehemently denies ANY culpability in the matter.

63. All your Petitioner asks for from this Court, is simply a ruling that will prohibit his inability to practice law in the District of Columbia until a decision is made on the issue by the merits division.

WHEREFORE Petitioner asks this Court to stop the District of Columbia Court of Appeals from prohibiting Mr. Nace from resuming the practice of law because to do so means Mr. Nace's valuable property right and liberty interest is being withheld on a daily basis without due process.

**Dated:**       **May 13, 2014**

Respectfully submitted,

PAULSON & NACE, PLLC

        /s/
Christopher T. Nace, Bar No. 977865
1615 New Hampshire Ave., NW
Washington, DC 20009
202-463-1999 – Telephone
202-223-6824 – Facsimile
ctnace@paulsonandnace.com